**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF FLORIDA, STATE OF GEORGIA, STATE OF HAWAII, STATE OF ILLINOIS, STATE OF INDIANA, STATE OF IOWA, STATE OF LOUISIANA, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF MONTANA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OKLAHOMA, STATE OF RHODE ISLAND, STATE OF TENNESSEE, STATE OF TEXAS, STATE OF WASHINGTON, STATE OF WISCONSIN, COMMONWEALTH OF MASSACHUSETTS, COMMONWEALTH OF VIRGINIA, DISTRICT OF COLUMBIA, BENJAMIN A. VAN RAALTE, MICHAEL J. CASCIO and JOHN J. MURTAUGH,**

      **Plaintiffs,**

**v.**                                            **Case No:   6:14-cv-283-Orl-31KRS**

**HEALOGICS, INC.,**

      **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 87) filed by the Defendant, Healogics, Inc. ("Healogics"), the Response filed by the Relators (Doc. 91), the

Supplement to the Motion to Dismiss (Doc. 90) filed by Healogics, and the Response in Opposition to the Supplement (Doc. 92) filed by the Relators.

**I.      Background**

The Relators' Corrected Second Amended Complaint (Doc. 37), which the Court dismissed (Doc. 75), measured 557 paragraphs over 148 pages. The Relators have added 65 paragraphs and 22 pages to their Third Amended Complaint. In total, the Third Amended Complaint measures 622 paragraphs over 170 pages, including over 1000 pages of exhibits—a morass of verbiage that is difficult to navigate. Nevertheless, the Court has endeavored to do so.

**A.      Parties**

As alleged in the Third Amended Complaint, Healogics is the nation's largest, for-profit provider of wound-care services. (Doc. 78 ¶ 20). Healogics manages approximately 800 hospital-based, wound-care centers throughout the United States. (*Id.* ¶ 30). The Relators, Dr. Benjamin Van Raalte, Dr. Michael Cascio, and John Murtaugh, have each worked for or with Healogics at various locations and times. (*Id.* ¶¶ 11–18). Dr. Van Raalte worked in Healogics-operated, wound-care centers in Bettendorf, Iowa and Moline, Illinois from May, 2009, to June, 2012. (*Id.* ¶ 12). Dr. Cascio practiced in Healogics-operated, wound-care centers in Longwood and Orlando, Florida from November, 2007, to June, 2014. (*Id.* ¶ 15). Murtaugh worked as a program director for Healogics in Orlando, Florida from April, 2013, to October, 2013. (*Id.* ¶ 18). After leaving Healogics, Murtaugh worked as a medical device sales representative and serviced Healogics's wound-care centers. (*Id.* ¶ 279).

## B. Procedural History

The Relators filed a sealed, qui tam complaint in February, 2014, (Doc. 1) alleging that Healogics violated the False Claims Act[1] ("the FCA"), along with similar provisions in Washington D.C. and twenty-seven states,[2] through a fraudulent scheme to bill the government for unnecessary medical procedures. Subsequently, the complaint has been amended (Doc. 11), unsealed (Doc. 29), amended (Doc. 35), corrected (Doc. 37), and dismissed (Doc. 75). The Court dismissed the Corrected Second Amended Complaint on May 11, 2016, finding that the Relators failed to satisfy the pleading requirement of Federal Rule of Civil Procedure 9(b). (Doc. 75).

On May 25, 2016, the Relators filed their Third Amended Complaint (Doc. 78), which was further corrected (Doc. 89) on June 24, 2016. The Third Amended Complaint describes the same purported conduct as the earlier complaint. But the Relators have now included examples of the alleged fraudulent scheme in the form of Patients One through Twelve. (Doc. 78 ¶¶ 232–61).

## C. The Alleged Fraudulent Scheme

As alleged in the complaint and accepted as true for the purposes of this motion, the fraudulent billing scheme is "widespread and endemic," allegedly reaching over 800 hospitals throughout the United States and ongoing for nearly ten years. (Doc. 78 ¶ 8). The fraudulent scheme can be condensed into three parts. First, the Relators allege that Healogics trained its staff to bill for surgical debridements when less expensive selective debridements were actually performed, and that Healogics trained staff to perform unnecessary debridements on a frequent, often weekly, basis.

---

[1] 31 U.S.C. §§ 3729–3733.

[2] California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, and Wisconsin.

(*Id.* ¶ 53, 99). If a wound-care physician or director had a low debridement rate, Healogics would label him as "non-aggressive" and either pressure him into compliance or target him for replacement. (*Id.* ¶¶ 100–02).

Second, the Relators allege that Healogics forced its employees and contractors to manipulate patients' diagnoses or wound classifications to provide a basis for treating patients with unnecessary hyperbaric oxygen therapy ("HBOT"). (*Id.* ¶ 78).

Finally, the Relators allege that Healogics mandated that all wound-care patients receive a transcutaneous oxygen measurement ("TCOM") even if not medically necessary. (*Id.* ¶¶ 232–34). Allegedly, such a requirement is contrary to the Center for Medicare and Medicaid Services Guideline. (*Id.* at ¶¶ 259–261).

In summary, the Relators allege that Healogics used the fraudulent billing scheme to "knowingly present, or cause to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;" and that Healogics "conspire[d] to defraud the Government by getting a false or fraudulent claim allowed or paid . . . ." 31 U.S.C. §§ 3729(a).

Healogics contends that the judicial admissions doctrine bars the specific patient examples provided by Dr. Van Raalte, and that the Third Amended Complaint fails to state a claim with the particularity required by Federal Rule of Civil Procedure 9(b).

## II.     Legal Standard: Motion to Dismiss and the FCA

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim tests the sufficiency of the complaint—it does not reach the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir.1984). In ruling on a motion to dismiss, the Court accepts factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *SEC v.*

*ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). The Court limits its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

Federal Rule of Civil Procedure 8(a)(2) mandates that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 35 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The plaintiff must allege facts that raise a right to relief above the speculative level and indicate the presence of the required elements. *Twombly*, 550 U.S. at 555; *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FCA claims are subject to Rule 9(b)'s heightened pleading requirements. *United States ex rel. Clausen v. Lab. Corp.*

*of Am.,* 290 F.3d 1301, 1308–09 (11th Cir. 2002). In the context of the FCA, a complaint satisfies the particularity requirement of Rule 9(b) if it alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Matheny v. Medco Health Sols. Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). It is not enough to plead fraudulent acts under the FCA based on information and belief. *See Clausen*, 290 F.3d at 1309.

Furthermore, a relator—a private person bringing a qui tam action on behalf of the United States—must allege that a false claim was actually submitted to the government. *United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1357 (11th Cir. 2006) ("The submission of a false claim is the *sine qua non* of a False Claims Act violation. Without the presentment of a claim, there is simply not actionable damage.") (internal quotations and citations omitted). Indeed, at least in the healthcare context, the Eleventh Circuit has held that the FCA "does not create liability merely for a healthcare provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *Clausen*, 290 F.3d at 1311.

**III.   Analysis**

    **A.   The Judicial Admissions Doctrine**

As an initial matter, Healogics argues that the Relators' updated allegation—that Dr. Van Raalte personally supervised and billed for unnecessary HBOT while covering for vacationing physicians—is contradicted by earlier allegations in the First and Second Amended Complaints (Docs. 11, 37)—that Dr. Van Raalte saw fraud and evidence of the alleged scheme, but never committed fraud or participated in the scheme. Healogics further argues that because of this

contradiction, the eight new patient examples provided by Van Raalte should not be considered by the Court under the judicial admissions doctrine.

A judicial admission is a factual assertion in a pleading or proceeding that is conclusively binding on the party that made it. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). But "[a]n amended pleading supersedes the former pleadings; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (quotations and citations omitted). Therefore, "[a]dmissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions." *White*, 720 F.2d at 1396 n.5 (citations omitted); *Borel v. U.S. Cas. Co.*, 233 F.2d 385, 388 (5th Cir. 1956) ("A superseded pleading is of course not a conclusive admission of the statements made therein."); *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1349 (M.D. Fla. 2014) (finding that statements in superseded pleadings were no longer conclusive judicial admissions, but remained competent evidence).

Therefore, the Court finds that the Third Amended Complaint supersedes the allegations in the First and Second Amended Complaints, and Dr. Van Raalte's patient examples will be considered by the Court. *Dresdner Bank AG*, 463 F.3d at 1215; *Aquent LLC*, 65 F. Supp. 3d at 1349.

### B.     Failure to State a Claim under the FCA (Counts I–III)

#### 1.     The TCOM Test Allegations

The Relators have made no attempt to repair the defective allegations related to unnecessary TCOM testing. Not one of their patient examples include an allegation that the government was fraudulently billed for TCOM testing. Quite the opposite, the complaint shows that the test was performed even when it was not reimbursable by Medicare. (Doc. 78 ¶ 233). Thus, any FCA claim

based on fraudulent billing for TCOM testing cannot survive Rule 9(b). *McInteer,* 470 F.3d at 1357 ("The submission of a false claim is the *sine qua non* of a False Claims Act violation. Without the presentment of a claim, there is simply not actionable damage.").

### 2. Dr. Cascio's Patient Two

Dr. Cascio's Patient Two example is not new. (Doc. 37 ¶¶ 152–58). Dr. Cascio evaluated Patient Two on June 16, 2015—nearly a year after his employment with Healogics ended—while working at a wound-care center in Springfield, Missouri. (Doc. 78 ¶¶ 262–63; Doc. 89). Before coming to Dr. Cascio, Patient Two had been treated at the Healogics-operated Palmetto Health Wound Center in West Columbia, South Carolina from November 25, 2013, to May 28, 2015.[3] Upon reviewing Patient Two's medical chart, Dr. Cascio concluded that the patient had received unnecessary debridements and HBOT at the South Carolina center—the patient received a total of ninety-seven debridements and eighty HBOT sessions over an eighteen-month period. The alleged result: a bill of over $300,000[4] paid by Medicare, "most of which was fraudulent." (*Id.* ¶ 269).

In its previous order, the Court found that this example failed Rule 9(b)'s particularity requirement because it did not "show that the South Carolina wound care center was subjected to the same pressure [by Healogics] regarding debridements and HBOT." (Doc. 75 at 12). In an effort to cure this defect, the Relators added the following allegation to their claim: To discover why the unnecessary treatment had been given, Dr. Cascio called Patient Two's treating physician at the South Carolina center. (Doc. 89). The treating physician, who remains unidentified,[5] joked about

---

[3] Out of the nearly seven years that Dr. Cascio worked at Healogics wound-care centers in Florida, Patient Two is the only example he provides, and all the alleged misconduct related to the patient occurred in a center where Dr. Cascio was never employed. (Doc. 78 ¶¶ 15, 262).

[4] The Relators previous allegations claimed that the total billed to Medicare was approximately $80,000. (Doc. 35 ¶ 158).

[5] No specific physician is identified in the Third Amended Complaint (Doc. 78, 89) nor in

doing things the "Healogics Way" and told Dr. Cascio that the treatments were ordered because he "was under a lot of pressure from Healogics to increase the center's revenue from debridements and hyperbarics." (Doc. 89).

Still, Dr. Cascio does not provide who the pressured physician was, how *that physician* was pressured by Healogics, and who did the pressuring. No person representing Healogics is identified in connection with Patient Two and no act by Healogics is described. "The particularity requirement of Rule 9(b) is satisfied if the complaint alleges 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (quoting *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009)). Therefore, Dr. Cascio's example fails to satisfy Rule 9(b).

### 3.     Murtaugh's Patients One, Eleven, and Twelve

All three of Murtaugh's patients carry over from the previous complaint. (Doc. 37 ¶¶ 122–23, 167–71). The allegations related to Patient One have been cosmetically rearranged, but substantively remain the same. Similarly, the allegations concerning Patients Eleven and Twelve have expanded in verbiage, but their pervious defects remain uncured.

Patients One, Eleven, and Twelve were discovered by Murtaugh during sales calls to the Florida Hospital Fish Memorial Wound Care Center. (Doc. 78 ¶ 279). Although these discoveries occurred after he worked directly for Healogics,[6] Murtaugh was in a position to examine patient medical and insurance records through his role as a medical device sales representative. It was

---

the Relators' Response to Healogics Motion to Dismiss (Doc. 91); rather, a list of treating physicians is provided: Dr. Carnohan, Dr. Armsey, Dr. Davis, and Dr. Jones. Doc. 91 at 6.

[6] Murtaugh left Healogics in October, 2013. (Doc. 78 ¶ 18).

standard protocol for prescribers of the devices sold by Murtaugh to submit clinical notes, physicals, and patient histories to support both the order of the device and insurance authorization. (*Id.* ¶¶ 279–81).

Allegedly, Patient One (Doc. 78 ¶¶ 279–85) received HBOT, but lacked a diagnosis that required the treatment.[7] In support of this allegation the Relators claim that the diagnosis submitted to Medicare on the patient's insurance authorization form differed from what Murtaugh found on the patient's chart. In addition to the contradicting diagnoses, the patient received treatment indicated for both venous leg ulcers (compression leg wraps) and diabetic wounds (HBOT); treatments that are allegedly incompatible with each other. Yet, conspicuously lacking from the Patient One example are any details concerning dates of the procedures, who performed them, how the physician was influenced by Healogics, or when a claim was submitted to the government. The Relators discuss an insurance authorization form, but never make a "showing that [Healogics] actually submitted reimbursement claims." *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006).

With regard to Patients Eleven and Twelve, the Relators have added the particular physicians who treated the patients and the dates that the unnecessary debridements were performed. Patient Eleven was treated by Dr. Clarence Scott and received a total of five debridements on a weekly or bi-weekly basis from August 6, 2014, to September 17, 2014, (*Id.* ¶ 287–93); and Patient Twelve was treated by Dr. Godson Oguchi and received a total of six debridements on a weekly or bi-weekly basis between September 25, 2014, and November 6, 2014.[8] (*Id.* ¶¶ 295–302). But there is no

---

[7] The complaint is not clear as to when the patient received the HBOT. Murtaugh allegedly had a discussion with Nurse Julie Vaught on December 2, 2014, where the nurse told Murtaugh that Patient One "had a ton of HBO[T]." (Doc. 78 ¶ 282). But later, the Relators provide diagnosis codes from an insurance authorization dated May 23, 2015. (*Id.* ¶ 284).

[8] Interestingly, out of the eleven total debridements between the patients, only one was

allegation that the doctors performed the debridements because of Healogics's influence. (Doc. 78 ¶¶ 286–303).

Therefore, because Murtaugh's examples fail to either implicate Healogics or show that a fraudulent bill was actually submitted to the Government, his examples fail to satisfy Rule 9(b)'s particularity requirement. *McInteer*, 470 F.3d at 1359; *Matheny*, 671 F.3d at 1222.

### 4. Dr. Van Raalte's Patients Three Through Ten

Dr. Van Raalte's patient examples (Doc. 78 ¶¶ 270–78) are more precise than those provided by Dr. Cascio and Murtaugh, but they still lack the specifics necessary to satisfy Rule 9(b). The Relators begin Dr. Van Raalte's section of the complaint with the general allegation that he was under "extreme pressure by two [unnamed] hospital Vice Presidents and Healogics Program Director Tim Raymon." (Doc. 78 ¶ 270). As part of his duties, Dr. Van Raalte would supervise unnecessary HBOT for absent physicians, and if Dr. Van Raalte objected to the procedure he would be "yelled at by hospital and Healogics employees." (*Id.*). But who were these Healogics employees? What was the nature of the pressure exerted by Tim Raymon? If Dr. Van Raalte did not "fraudulently falsify eligibility criteria" then who did? (*Id.*). Presumably, in an effort to answer these questions, the Relators continue on with Dr. Van Raalte's specific patient examples.

Patients Three and Eight are the only examples that include the identity of the person who ordered unnecessary HBOT. Allegedly, Dr. Gregory Bohn "was under extreme pressure from Healogics and his hospital administration" and "misrepresented [Patient Three's] condition in order to meet his wound care center's benchmarks." (Doc. 78 ¶¶ 271, 276). Similarly, Dr. Bohn ordered HBOT for Patient Eight "in order to meet benchmarks and as a result of the pressure and training

---

allegedly billed to Medicare; the rest were billed to the individual patient.

from Healogics." (*Id.* ¶ 276). Again, no specific Healogics representative is named. Nor is the specific nature of the pressure revealed.

The remainder of Dr. Van Raalte's examples—Patients Four, Five, Six, Seven, and Ten—are nearly identical to each other and contain the same statement: "Under extreme pressure from Healogics and his hospital administration, Dr. Van Raalte supervised a portion of this patient's [unnecessary] HBO therapy . . . ." (Doc. 78 ¶¶ 272, 273, 274, 275, 276, 277, 278). This statement is the sole allegation connecting Healogics to each particular patient and no misdiagnosing physician is ever identified.

To satisfy Rule 9(b) the Relators are required to allege specifically "the details of [Healogics's] allegedly fraudulent acts, when they occurred, and *who engaged in them*." *Clausen*, 290 F.3d at 1310 (quotations and citations omitted); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (finding that allegations related to an FCA claim failed to satisfy Rule 9(b) because the relator "failed to allege the 'who,' 'what,' 'where,' 'when,' and 'how' of the fraudulent submissions to the government"). These "broad references" to Healogics and the hospital administration will not do. *United States ex rel. Romanosky v. Aggarwal*, No. 6:03CV117ORL-31KRS, 2005 WL 6011259, at *5 n. 10 (M.D. Fla. Feb. 10, 2005) (quoting *United States ex rel. Carroll v. JFK Medical Ctr.*, No. 01-8158-CIV, 2002 WL 31941007, at *6 (S.D. Fla. Nov. 15, 2002)).

Even if Dr. Van Raalte's allegations were credited with sufficient precision to satisfy Rule 9(b), the provision of unnecessary HBOT to eight patients in a single wound-care center in Bettendorf, Iowa over a one-year period does not adequately support the claim alleged by the Relators—a widespread, complex national scheme to defraud the government using various procedures over a ten-year period. Therefore, Counts I–III will be dismissed.

### C. Conspiracy to Submit False Claims (Count IV)

In Count IV, the Relators allege that Healogics conspired with over 800, mostly unidentified hospitals ("Partner Hospitals") to defraud the government in violation of § 3729(a)(1)(C) of the FCA. An FCA conspiracy claim is established when the relator demonstrates "(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim." *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (quoting *United States ex rel. Stinson, Lyons, Gerlin, & Bustamante, P.A. v. Provident Life & Accident Ins. Co.*, 721 F. Supp. 1247, 1259 (S.D. Fla. 1989)). Additionally, a claim under § 3729(a)(1)(C) must satisfy Rule 9(b). *Id.*

In its previous Order, the Court dismissed this count because the Relators failed "to identify, *inter alia*, any person who agreed with Healogics to defraud the government." (Doc. 75 at 14). Here, the Relators have still failed to identify specifically who it was that made the alleged agreement between Healogics and the Partner Hospitals, and have failed to specifically describe any overt act performed to effect the object of the conspiracy. *See supra* Section B. Therefore, the Relators' conspiracy claim must fail.

### D. State Law Claims (Counts V–XXXII)

Neither party has addressed the merits of the state law claims in counts V–XXXII. But, given that the federal claims will be dismissed with prejudice, the Court will not exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see id.* § 1367(a). Therefore, Counts V-XXXII will be dismissed without prejudice.

It is, therefore, **ORDERED** that Defendant's Motion to Dismiss (Doc. 87) is **GRANTED.** Counts I–IV are dismissed with prejudice, and Counts V–XXXII are dismissed without prejudice. All pending motions are denied as moot, and the clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 13, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party